The said Samuel was in possession of the mortgaged premises and sold the same to Lewis Johnston 5 July, 1800, who entered into possession soon afterwards, and in two weeks after Purviance went out. Johnston sold to John Evans, the devisor and husband of the defendant, 18 February, *Page 316 
1804, who entered into possession in two or three days after Johnston went out, continued in possession and died seized of the premises, and the defendant has continued in the actual possession ever since. There was no evidence that Johnston had notice of the mortgage before he purchased from Purviance, nor was a knowledge of the mortgage brought home to Evans before he purchased.
But it was proved that Johnston knew of the mortgage before he sold to Evans and complained of the injury done him by Purviance; and it was proved that about the time Purviance was a candidate for Congress it was universally spoken of to his disadvantage that he sold land to Johnston which was mortgaged; and Johnston himself spoke of it as a dishonest act in him. It was also proved that Evans lived a near neighbor to Johnston and was intimate with him, and the opinion of the witness was that Evans must have heard that the land was mortgaged. The whole of these purchases were for a full and a valuable consideration.
Philemon Hodges proved that in 1803 or 1804 he was desirous to purchase the land, but had heard of the mortgage, and went to Burkloe and asked him if he had a mortgage for it, who answered that he had, (418) but that it was nearly paid up, and for him not to stop purchasing on that account, for that he should not be disturbed. He proved that Burkloe died in 1807 or 1808.
Jackson proved that near or about the time Johnston sold, he heard Burkloe say to him he had received satisfaction for the mortgage, and that he might sell; he should never be disturbed. The same witness swore that on the trial of this cause in the county court, David Evans (then a witness, but now dead) swore that about one or two months before Evans, the devisor, his father, purchased the land from Johnston, Burkloe told him he had received satisfaction for the mortgage.
George Evans, another son of the devisor of the defendant, swore that Burkloe told him the day before his father purchased the land that he had no mortgage for it, and he searched the register's office for a mortgage, but could find none. The mortgage produced was not registered until after the commencement of the suit.
The jury found a verdict for the defendant; and on motion for a new trial, the same is ordered to the Supreme Court, on the following questions:
1. In a case like the present, is there such an adverse possession as upon which the statute will attach?
2. The estate once forfeited and become absolute at law, is it a good defense in ejectment by the mortgagee to offer parol evidence of the payment of the mortgage under the act of Assembly, or such evidence as is here offered? *Page 317 
Samuel Purviance executed the mortgage deed to Burkloe 17 November, 1797, to secure the payment of $170, payable 1 December, 1799. The mortgagor was permitted to remain in possession, and after the time the mortgage became forfeited, to wit, on 5 July, 1800, he conveyed the land to Lewis Johnston, who had no notice of the mortgage, and who entered into possession of the premises, (419) and held them as his own property until 18 February, 1804, when he sold the premises to John Evans, who entered as soon as Johnston went out of possession, and continued the possession as long as he lived, and the defendant (his widow and devisee) has continued in possession ever since.
It appears from the case that Lewis Johnston, John Evans, and the present defendant did, each in succession, hold the possession of the land, as their own and adversely to all the world. It does not appear from the cause when the action was commenced; but it is admitted that it was more than seven years after the entry of Johnston. We are of opinion that the defendant and those under whom she claims have been in the continued possession of the premises under a color of title for more than seven years, holding the lands adversely to all the world, and, therefore, the act of 1715 bars the lessor of the plaintiff in the present action. The opinion given by the Court upon the first point in the cause renders it unnecessary to give any opinion on the second point.
The motion for a new trial in this cause is overruled.
Cited: Parker v. Banks, 79 N.C. 483; Weathersbee v. Goodwin,175 N.C. 238.